the trustees to this property could not be subjected to any claim of Flanagan or any one claiming under him who was a party to that action and whose interest in the property was conveyed by the referee to the appellants.

The authorities sustain this conclusion. In Rector, etc., Christ P. E. Church v. Mack, 93 N. Y. 488, 45 Am. Rep. 260, it was said:

"The effect of the foreclosure deed, therefore, as determined by the statute, is to vest in the purchaser the entire interest and estate of the mortgagor and mortgagee as it existed at the date of the mortgage, and unaffected by the subsequent incumbrances and conveyances of the mortgagor. * * * The statute allowed her to be a purchaser, and, in determining the effect of the foreclosure deed, its terms draw no distinction between purchasers. It does not discriminate. Whoever may lawfully purchase becomes the purchaser, whose title is described and determined."

In People ex rel. Short v. Bacon, 99 N. Y. 275, 2 N. E. 4, it was said:

"The relator's lien or right, whatever it may have been, upon the land or interest of the mortgagor or judgment debtor, was subsequent to the mortgage. They were parties to the foreclosure, and the conveyance in pursuance of it was an entire bar against them as well as against the mortgagor. Neither could, after that, have any right or interest in the equity of redemption."

See, also, Nutt v. Cuming, 22 App. Div. 92, 47 N. Y. Supp. 800; Id., 155 N. Y. 309, 49 N. E. 880.

It follows that the judgment must be reversed, and, as it appears from the undisputed facts that the plaintiff is not entitled to any relief, the complaint is dismissed, with costs. All concur.

---

### FOX v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. April 15, 1904.)

1. CARRIERS—STREET RAILROAD—INJURY TO PASSENGER—UNEXPECTED STARTING OF CAR—EVIDENCE—SUFFICIENCY.

In an action against a street railway company for injuries to a passenger from the alleged sudden starting of the car while he was alighting, evidence *held* sufficient to sustain a verdict for defendant on the issue as to whether the car was started as claimed.

2. APPEAL—TRIAL COURT'S REASONS—EXAMINATION OF OPINION.

On appeal the appellate court may examine into the opinion of the trial judge to ascertain the grounds on which he set aside the verdict of the jury.

3. TRIAL—EVIDENCE—EXCEPTION—WAIVER OF OBJECTION.

Where the trial court commits an error in a ruling on the admission of evidence, it may cure the error by striking out the testimony or by granting a new trial to the party against whom the ruling is made.

4. SAME—WAIVER OF OBJECTION.

Where, because of the introduction of certain evidence by defendant, the trial court stated that, if counsel for plaintiff desired, he would declare a mistrial, but counsel stated that he would rather have the record remain as it was, and subsequently the court stated that he was about to strike out the evidence, but plaintiff's counsel in reply expressed a desire to rebut the evidence, plaintiff could not thereafter move to set aside the verdict in favor of defendant, plaintiff's exceptions to the court's ruling on the admission of the evidence having been waived.

Appeal from Trial Term, New York County.

Action by Richard K. Fox against the Metropolitan Street Railway Company. From an order setting aside a verdict in favor of defendant, it appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles F. Brown, for appellant.

F. B. House, for respondent.

O'BRIEN, J. The plaintiff seeks in this action to recover damages for personal injuries alleged to have been received through the negligence of the defendant. The plaintiff testified that on the 4th day of November, 1900, at about half past 6 in the evening, he was a passenger on an east-bound car of the defendant's railroad on 125th street; that when the car was between Lenox and Fifth avenues he told the conductor to stop at Fifth avenue; that as the car approached the corner he left his seat to get off; that the car stopped at the corner on the westerly side of Fifth avenue as he got on the platform and started to leave the car, and that as he was getting off the car started with a jerk, broke his hold on the cross-bar, and threw him off, inflicting painful injuries. The plaintiff was corroborated by a police officer, who testified that he saw the accident, and at the time the plaintiff attempted to get off the car was standing perfectly still, and, as he was getting off, the car started suddenly and threw him. For the defendant the conductor testified that the plaintiff asked him to stop the car at Fifth avenue, and that, as was customary, he stopped on the west crossing, and, after having again started up the car, it was moving very slowly, when the plaintiff asked him to stop; and he said all right, he would stop on the other side, and requested him not to step off until they came to a full stop, but he took no notice; that "he had a cane in his hand. He stepped off holding the cane in his right hand, and held on the hand rail with his left, and in doing so the cane tripped him." Another witness called by the defendant testified that he was standing on the rear of the car, and that after the car stopped on the west side of Fifth avenue it started up again on the signal of the conductor, and was moving slowly across Fifth avenue, when the plaintiff got up from his seat in the car. "I saw him get on the step with the left hand on the stanchion and the right foot extending over the step. He had a cane in the left hand, and he had hold of the rail. * * * He stepped off somehow or other. I believe the cane tripped him." Another witness testified that he was also on the rear platform, and the car was going over slowly when Mr. Fox started to get off. "He used his cane as a support, and had his left hand on the railing on the box of the car. When the conductor saw him going off he told him to wait until he got to the other side of the street, and he didn't pay any attention to him."

With respect to the two versions, therefore, as to the cause of the accident, there was a clean-cut question of fact, and, whether we regard the number of witnesses or the credibility to be attached to their testimony, as weighed in the light of whether they were or were not disinterested, it cannot be said that the verdict rendered in favor of the defendant was so clearly against the weight of evidence that the learned

trial judge on this ground would have been justified in setting it aside. Nor do we understand that this was his reason, because this court can examine into the opinion of the trial judge to ascertain the grounds upon which the decision was made. Bryant v. Allen, 54 App. Div. 500, 67 N. Y. Supp. 89; Crossman v. Wyckoff, 64 App. Div. 554, 72 N. Y. Supp. 337. From the opinion of the trial judge it appears that the verdict was set aside because of the admission in evidence of the statement of a Dr. Cook, which the trial judge regarded not only as harmful, but as incompetent. We have no reason to differ with this view of the evidence, but, regarded as harmful and incompetent, it remains to determine whether, in view of the manner in which such evidence was treated by the plaintiff's attorney, the exception taken to its admission was available upon the motion to set aside the verdict. The conductor, on cross-examination, testified that he heard a conversation between the plaintiff and a Dr. Cook in reference to the accident, and was then asked: "You may state the conversation that you heard between Dr. Cook and the plaintiff with reference to the happening of this accident," whereupon the plaintiff's counsel said: "I object to it as far as it involves any statement on the part of Dr. Cook. I do not object to his stating what Mr. Fox said." An extended colloquy then followed between the court and counsel, and the witness answered, in response to the court's inquiry, "Mr. Fox said nothing on that occasion when Dr. Cook spoke." Finally the question was asked: "You may state what conversation you heard between Dr. Cook and Mr. Fox in reference to this accident." This was objected to as incompetent, and the objection was overruled, and an exception taken. The witness then answered in part as follows: "This gentleman standing on the sidewalk, looking at the whole affair, said, when asked for his name by Mr. Fox: 'I refuse to give you my name. It is your own fault. You had no right to step off the car when it was in motion.' Then he said, 'You must be one of their shoo-flys or inspectors.'" After this testimony had been received the court said to plaintiff's counsel: "If you want me to declare this a mistrial, I will, on account of what has been brought out about Dr. Cook's statement. * * * I leave it to you." And the plaintiff's counsel answered, "No, I would rather have the record stay as it is." Again, after the defendant had rested, and the plaintiff was giving rebuttal testimony, the court said, "I am going to strike out the evidence of what Dr. Cook said," and the plaintiff's counsel stated, "It is already before the jury, and I submit that I should be allowed to rebut it," and the court replied, "If you do not want me to strike it out, very well." The court, it thus appears, was desirous of protecting fully the plaintiff's rights, and, as testimony had inadvertently been admitted which the judge regarded as incompetent, he offered to the plaintiff the only remedies that could be offered, namely, to strike out the testimony, or, if the plaintiff wished, to declare a mistrial, and thus enable him to go before another jury. Obviously, after these two offers were made by the court and declined by counsel, the exceptions taken to the rulings of the court were valueless. Having taken the chances of a favorable verdict, and been disappointed, the plaintiff could not, since he had, in effect, waived the exceptions by rejecting

the court's offers, subsequently, upon the ground that the rulings to which such exceptions were taken were erroneous, move to set aside the verdict. We think it will be conceded that upon a trial, though a court may commit an error in a ruling, it is entirely competent to cure that error by striking out the testimony—if that is sufficient to remedy the harm done—or by permitting the party against whom the ruling is made to have a new trial. In other words, there is for the trial judge a locus pœnitentiæ, or a right, when the court thinks proper to change its ruling, to call attention to it, as was done by the learned trial judge, and offer to remove any harm or prejudice which the party may have suffered by reason of the ruling. If, upon such option being given to counsel, he sees fit to reject it, and proposes to speculate on the verdict of the jury, he cannot, if disappointed at the outcome, then have a new trial. The cases are uniform in holding that counsel upon the trial can waive the right which he has secured by a proper exception, and that, when once waived, it is gone forever, and hence is not thereafter available upon a motion for a new trial or to set aside a verdict. Foster v. Tenenbaum, 2 App. Div. 168, 37 N. Y. Supp. 722; Brady v. Nally, 151 N. Y. 258, 45 N. E. 547; Brown v. Mayor, 11 Hun, 23; Ward v. Craig, 87 N. Y. 550; Hopkins v. Clark, 158 N. Y. 299, 53 N. E. 27; Neil v. Thorn, 88 N. Y. 270.

We have not overlooked the fact that the learned trial judge in his opinion states that he sets aside the verdict not alone because of the testimony of the conductor as to what Dr. Cook said, but also as a matter of discretion. We concur, however, with the statement in the respondent's brief that such discretion "can refer only to the weight of the evidence." To the subject of the weight of evidence we have already referred, our conclusion being that on this ground the verdict could not properly be set aside.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the verdict reinstated. All concur.